IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Action No: 1:06 CV 02003 RWR

PAUL RICHARD NEWTON,

               Plaintiff,

v.

FAISON-KALORAMA, LLC,

               Defendant.

DEFENDANT'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND

Defendant Faison-Kalorama, LLC ("Defendant") submits this memorandum in opposition to Plaintiff Paul Richard Newton's ("Plaintiff") Motion for Order Remanding Case to the District of Columbia Superior Court.

## I.    INTRODUCTION/SUMMARY

In support of his motion, Plaintiff makes three arguments: (1) Defendant's Notice of Removal fails to make the necessary showing concerning its sole member's principal place of business; (2) the principal place of business for both Defendant and its sole member is "likely" the District of Columbia; and (3) the "true" amount in controversy does not exceed $75,000. Each of Plaintiff's arguments misses the mark. Addressing Plaintiff's contentions in order: (1) Defendant's allegations of the sole member's state of incorporation and principal place of business fit precisely with the "short and plain statement" required under 28 U.S.C. § 1446(a); (2) Defendant's principal place of business is in North Carolina and even more plainly, not the District of Columbia; and (3) the Complaint puts at least $150,000 in controversy because it states that the deed covenant at issue prevented Plaintiff from making a sale involving $150,000 in profit.

## II.     FACTUAL BACKGROUND

Plaintiff is challenging a contract provision and deed covenant that attempt to discourage real estate investors from "flipping" condominium units. Under this provision, the purchaser represents that it is purchasing the unit as a primary, year-round residence and agrees that if he or she sells the unit within the 12-month period following settlement, he or she will pay the developer 50% of the net sale proceeds. Purchase Contract, Addendum #1. This provision does not apply if the purchaser is required to sell or lease the unit within the 12-month period as a result of the purchaser's involuntary loss of employment. *Id.* The referenced portions of the Purchase Contract are attached as Exhibit 1.

Plaintiff, a licensed real estate agent, claims that a fellow broker told Plaintiff that the provision "was not being enforced" and "could not appear on the deed to be conveyed." Complaint, ¶7. (Interestingly, that fellow broker is employed by the same real estate company that used to employ Plaintiff.) Plaintiff acknowledges, though claiming surprise, that the deed covenant was in fact made a part of the deed. Complaint, ¶13. Plaintiff also alleges that he had a potential buyer interested in purchasing his unit for "approximately One Hundred Fifty Thousand Dollars ($150,000.00) more than the Purchaser's purchase price," but was unable to enter into a sales contract because of the deed covenant. Complaint, ¶15.

Defendant stands behind the enforceability of the contract provision and deed covenant and states that the third party agent told Plaintiff "he should consult his own attorney about any questions concerning the language of the Purchase Contract, which Newton later confirmed having done." Answer, ¶6. Moreover, the Purchase Contract states at Paragraph 5(c):

> Purchaser acknowledges and agrees that Seller shall not be responsible for any information given by Agent or any cooperating broker which is not included in the Condominium Documents or which is at variance with the statements or provisions contained therein. The cooperating broker has no authority, apparent or actual, to act on behalf of Seller.

The Purchase Contract further states at Paragraph 23(d): "Purchaser agrees that Purchaser will rely only upon representation set forth in this Agreement." The signature page of the Purchase Contract shows that Plaintiff acted as his own real estate agent in the transaction.

### III.    LEGAL DISCUSSION

Because Plaintiff is a District of Columbia resident and FCD-1997 is a North Carolina corporation, the resolution of Plaintiff's motion to remand boils down to whether the principal place of business of FCD-1997 is other than the District of Columbia. Plaintiff first challenges the technical sufficiency of Defendant's pleading of this jurisdictional fact, then challenges its substance based upon speculation alone. Plaintiff's last argument, concerning the amount in controversy, is belied by his Complaint.

### A.    Defendant Sufficiently has Pleaded FCD-1997's Principal Place of Business.

Plaintiff has challenged the technical sufficiency of the Notice of Removal. Plaintiff's Memorandum at 3-4. At Paragraph 6 of the Notice of Removal, Defendant states that its sole member is FCD-1997, a North Carolina corporation. Defendant then alleges: "FCD-1997 G.P., Inc. is solely a citizen of the state of North Carolina because it was incorporated in that state and has its principal place of business there." This standard pleading of jurisdictional facts is sufficient.

28 U.S.C. § 1446(a) provides in relevant part: "[D]efendants desiring to remove any civil action. . . shall file. . . a notice of removal. . . containing a short and plain statement of the grounds for removal. . . ." Leading commentators note that "a short and plain statement" is the same phrase used in Fed. R. Civ. P. 8(a) and that liberal pleading rules apply. C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, §3733 at 353 n.9 and 356.

The adequacy of typical jurisdictional allegations normally is not challenged.[1]  *See, e.g., Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.C. Cir. 2002).  In an unpublished opinion, however, the District of Columbia Circuit found that a simple allegation of "complete diversity" was sufficient grounds for removal.  *Agee v. Bush*, 1996 W.L. 914110, n.3 (D.C. Cir. 1996).  Thus, Defendant's pleading of FCD-1997's principal place of business is sufficient under 28 U.S.C. § 1446(a) and this circuit's precedents.

      **B.**     **FCD-1997's Principal Place of Business is North Carolina, and even more Plainly, is Not The District of Columbia.**

In his second argument, Plaintiff speculates that the principal place of business for both the Defendant and its sole member is "likely" the District of Columbia.  Plaintiff's Memorandum at 4.  This speculation apparently is based upon the name of the limited liability company, Faison-Kalorama, LLC, even though Plaintiff acknowledges that it is the citizenship of the member that is determinative.  Plaintiff's Memorandum at 3.  *See, e.g., Handelsman v. Bedford Village Assocs. L.P.*, 213 F.3d 48, 52 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).

As stated above, because FCD-1997 is a North Carolina corporation, the only citizenship issue is the state in which FCD-1997 maintains its principal place of business.  In this district, "[t]he principal place of business for a corporation is usually its headquarters, where day-to-day business is conducted."  *Heritage Educ. Trust, et al., v. Katz*, 287 F. Supp. 2d 34, 36 (D.D.C. 2003) (citing *Masterson-Cook v. Criss Brothers Iron Works*, 722 F. Supp. 810, 812 (D.D.C.

---

[1] The challenge normally goes to the substance of the jurisdictional facts, and to that end, the Court properly may consider evidence that substantiates the jurisdictional facts pleaded in the Notice of Removal.  Plaintiff's statement that "amendment must occur" within the 30-day removal period only applies to amendment of the Notice of Removal to state "new grounds" for removal.  Plaintiff's Memorandum at 3.  *See* C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure,* §3733 at 358-61.  Indeed, it is common for the court to consider evidence such as Defendant submits in Section III(B).  *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 947-49 (11th Cir. 2000)(district court properly relied upon defendant's calculations subsequent to removal and relevant to amount in controversy); *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990), *cert. denied,* 498 U.S. 817 (district court properly considered affidavits and depositions in ruling on motion to remand).  Plaintiff's recently filed Motion to Allow Limited Discovery demonstrates that Plaintiff now doubts his pleading argument.

1989). Further, "[i]f a corporation does business in more than one state, a court might look for its 'nerve center of operation' to determine its citizenship." *Id.*

As demonstrated in the Affidavit of Nancy Farmer attached as Exhibit 2, FCD-1997's headquarters is in Charlotte, North Carolina. All of its directors and eleven of its twelve officers are in Charlotte, where its day-to-day business is conducted and the fundamental corporate decisions are made. Farmer Affidavit at ¶9. In addition, all of FCD-1997's Faison affiliates are headquartered in Charlotte, as is Faison & Associates, LLC, which supplies all of the employees who conduct FCD-1997's business. *Id.* at ¶10. Moreover, Charlotte is FCD-1997's registered office address, registered mailing address and principal mailing address. *Id.* at ¶5. Finally, although FCD-1997 is qualified to do business and has participated in projects in several states, the vast majority of its current ownership interests are in North Carolina entities. *Id.* at ¶¶6-8. Accordingly, FCD-1997's principal place of business is North Carolina.

Even more obvious is that FCD-1997's principal place of business is *not* the District of Columbia. The Kalorama Road development is the only District of Columbia project in which FCD-1997 has been involved. *Id.* at ¶7. As a result, there is no basis to find that the District of Columbia, any more so than the various other places where FCD-1997 has had some business activity, is FCD-1997's principal place of business.

Plaintiff's "information and belief" assertions about the Defendant are irrelevant to the citizenship of FCD-1997 and leave him with nothing but speculation that this district is "likely" FCD-1997's principal place of business. Plaintiff's Memorandum at 4. In addition, every case Plaintiff cites to support this argument is from outside this district. Further, these cases either support a finding of diversity or are distinguishable. *In Dimmit & Owens Financial, Inc. v. The United States*, 787 F. 2d 1186, 1192 (7th Cir. 1986), the court employed the "nerve center test" to find that the principal place of business was where the principal executive offices were

located, even though the principal operating facilities were in another state. Accordingly, the holding in that case is consistent with Defendant's position here, and the instant case is stronger factually.

Plaintiff's other cases are distinguishable. *Delome v. Union Barge Co.*, 444 F. 2d 225, 233 (5th Cir. 1971, *cert. denied*, 404 U.S. 995 (1971)) ("*allegation* that a corporation's *home office* is located in a certain state is not equivalent to a declaration that its *principal place of business* is situated in that state")(emphasis added); *Harris v. Black Lawson Co.*, 961 F. 2d 547, 551 (5th Cir. 1992) (employs "total activity test" and finds that a long inactive corporation does not have its principal place of business in the state of its last business activity); *J.A. Olson Co. v. The City of Winona*, 818 F. 2d 401, 413 (5th Cir. 1987) (again employs "total activity test" and finds that, when the "only substantial activity" and "some significant business decisions are made" in one place, that location is the principal place of business.) As a result, under any recognized test for determining principal place of business, complete diversity exists in this case.

C.  **The Complaint's Allegations State an Amount in Controversy Well in Excess of $75,000.**

Plaintiff begins this argument by declaring that "[t]he Defendant's allegation that the amount in controversy exceeds $75,000 is not made in good faith." Plaintiff's Memorandum at 5. Plaintiff's declaration strains credulity in light of Paragraph 15 of his Complaint:

> On or about May 2005 [sic], the Plaintiff received an expression of interest in purchasing his unit for $699,00 [sic]; approximately one hundred fifty thousands dollars ($150,000.00) more than the Purchaser's purchase price. However, the Plaintiff has been advised by a title company that the Plaintiff could not convey clear title, unless the deed covenant at issue was removed. See Plaintiff's Exhibit 3, attached hereto. The plaintiff [sic] was unable to enter into a contract to sell the property.

In Paragraph 36, Plaintiff without question refers back to his lost sale allegation when he claims to have "suffered a pecuniary loss because of unreasonable impairment of his right to freely sell

his property at any time and at any price he elected…." Although Plaintiff does not seek a specific amount in his *ad damnum* clauses, the obvious upshot of Paragraphs 15 and 36 is that Plaintiff was making a claim for a lost profit of approximately $150,000.

This Court has looked to the "four corners of the initial pleading or subsequent paper" to determine the amount in controversy. *Julien v. CCA of Tennessee, Inc.*, 268 F. Supp. 2d 19, 22 (D.D.C. 2003) (quoting *Loverne v. Gen. Motors Corp.*, 121 F. 3d 160, 162 (4th Cir. 1997) (finding that complaint's allegations stated an amount less than $75,000). *See also Walker v. Washington*, 627 F. 2d 541, 545 (D.C. Cir. 1980) (face of the complaint clear that plaintiff's claim exceeded the jurisdictional requirement); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 43 (D.D.C. 1999) (amount in controversy requirement met concerning disgorgement claim stated in complaint with no reference to whether the amount at issue was in *ad damnum* clause or elsewhere).

Moreover, in his *ad damnum* clauses Plaintiff has demanded "exemplary," "treble," and "punitive" damages. Complaint, pp. 6-7. The District of Columbia Circuit has stated, "It is clear that punitive damages should be considered in determining the jurisdictional amount." *Hartigh v. Latin*, 485 F.2d 1068, 1072-73 (D.C. Cir. 1973) (citing *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240, 64 S. Ct. 5 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.")). In addition, according to the Fourth Circuit, "When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages, available to [Plaintiff] . . ." *R. L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc.*, 2001 WL 1528458 (4th Cir. 2001) (citing *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir.1983); C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 3702 (3d ed.1998)). Accordingly, when the Court considers Plaintiff's requests for

enhanced damages, the amount in controversy reaches a new multiple above the $75,000 threshold.

Despite his allegation of a $150,000 loss and demands for punitive and treble damages, Plaintiff argues that he made a pre-removal settlement offer showing that less than $75,000 is in controversy. Plaintiff's Memorandum at 5.[2] Plaintiff's settlement offer argument is without merit for at least two reasons. First, the case Plaintiff cites for this proposition is both non-determinative and factually distinct. In *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1097 (11th Cir. 1994), the court stated that, while a settlement offer below the jurisdictional amount "by itself may not be determinative, it counts for something." The court, however, primarily based its holding on the complaint, which alleged damages of less than the jurisdictional amount. *Id.* at 1097. In the instance case, in contrast to *Burns*, Plaintiff plainly has alleged an amount in excess of the jurisdictional amount. Moreover, in *Jackson v. American Bankers Ins. Co. of Florida*, 97 F. Supp. 1450, 1454 (S.D. Alabama 1997), the court elaborated on *Burns*, explaining that:

> [I]t is not the settlement value of the case that determines whether the jurisdictional amount is in controversy. The appropriate measure is the litigation value of the case assuming that the allegations of the complaint are true and assuming the jury returns a verdict for the plaintiff on all claims made in the complaint.

The court further explained that a settlement offer is not "particularly helpful" in determining the amount in controversy because settlement offers involve considerations of securing immediate payment and avoiding the inconvenience of litigation. *Id.* (citation omitted). Similarly, Plaintiff's settlement offer here is not "particularly helpful" for jurisdictional purposes.

---

[2] Although arguably beside the point, the factual premise of Plaintiff's argument is incorrect. Plaintiff's counsel did not make a pre-removal settlement offer, at least not according to one of his earlier versions of the facts. Pre-removal, Plaintiff's counsel indicated that his client would settle for waiver of the deed covenant and no money. When Defendant's counsel responded a short time later that Defendant was interested in such a settlement, Plaintiff's counsel stated that he had not actually made a "formal offer" and his client also would require some cash to settle. Subsequent to removal, when Defendant's counsel again contacted Plaintiff's counsel about settlement, Plaintiff's counsel initially refused to make any offer unless he knew it would be accepted. Eventually, Plaintiff's counsel did make the offer stated in Plaintiff's memorandum and Defendant has made a counteroffer.

Second, Plaintiff's argument ignores the monetary value of the injunctive relief he seeks, namely, release of the deed covenant. Based on the allegations of Paragraphs 15 and 36 of the Complaint, Plaintiff has claimed that the deed covenant at issue has caused a loss of approximately $150,000. Necessarily then, release of that covenant must have an alleged value of the same amount. Although Plaintiff's settlement position recognizes the weakness of his damages claims, it is the Complaint that is determinative for jurisdictional purposes. The Court should reject Plaintiff's amount in controversy argument.

## IV.   CONCLUSION

Based upon the foregoing, Defendant requests that the Court deny Plaintiff's motion.

This 3rd day of January, 2007.

/s/ Eric L. Yaffe
Eric L. Yaffe (D.C. Bar No. 439750)
Jimmy Chatsuthiphan (D.C. Bar No. 492603)
GRAY, PLANT, MOOTY, MOOTY
   & BENNETT, P.A.
2600 Virginia Avenue, Northwest, Suite 1111
Washington, D.C. 20037
Telephone:  (202) 295-2200
Facsimile:  (202) 295-2250

Of Counsel:

D. Blaine Sanders
ROBINSON BRADSHAW & HINSON
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-8344
Facsimile:  (704) 373-3944
bsanders@rbh.com
Attorneys for Defendant
Faison-Kalorama, LLC

C-1017218v2

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** was been served via the Court's electronic system upon:

> John R. Galloway
> 1516 P Street, N.W.
> Washington, D.C. 20005
> Facsimile (202) 726-6629
> johngalloway@email.com
>
> Attorney for Plaintiff

This 3rd day of January, 2007.

/s/ Eric L. Yaffe_____

**THE DELANCEY LOFTS CONDOMINIUM**
**CONDOMINIUM UNIT PURCHASE AGREEMENT**

THIS AGREEMENT is made this 12th day of May, 2005 (the "Effective Date"), being the date this Agreement is accepted by Seller, by and between Paul Richard Newton (hereinafter known as the "Purchaser") and Falson-Kalorama, LLC, a North Carolina limited liability company (hereinafter known as the "Seller"). THE MAYHOOD COMPANY (hereinafter known as the "Agent") is acting as the agent of Seller in this transaction.

WHEREAS, Seller is the Declarant of The Delancey Lofts Condominium (the "Condominium") located at 1701 Kalorama Street, Washington, D.C. 20009 pursuant to the provisions of Section 42-1901.01, et seq., of the District of Columbia Code, as amended (the "Condominium Act") and;

WHEREAS, the Purchaser wishes to purchase the Condominium Unit hereinafter described.

WITNESSETH:

That for and in consideration of a deposit by Purchaser in the sum of Twenty Six Thousand Seven Hundred Ninety Five Dollars ($26,795) by check subject to collection (the "Deposit"), the receipt and sufficiency of which are hereby acknowledged, Purchaser agrees to buy, and Seller agrees to sell, residential Condominium Unit No. 213 in the Condominium (the "Condominium Unit"). The Condominium Unit, together with the options described herein, is sometimes hereinafter referred to as the "Property".

All capitalized terms used without definition in this Agreement have the meanings specified for such terms in Section 42-1901.02 of the Condominium Act. All references to Paragraph numbers mean the Paragraphs of this Agreement unless otherwise specified.

Seller agrees to sell and Purchaser agrees to purchase the Property, together with an undivided interest in the Common Elements of the Condominium as set forth in Exhibit B to the Condominium Declaration, for the Purchase Price as shown in Paragraph 1 below.

1. **Basic Terms of Purchase.**

    (a) The Purchase Price for the Property shall be as follows:

    (i) Base sales prices of Condominium Unit (includes General Specifications on Schedule A) — $535,900

    (ii) Limited Common Element Parking STANDARD SPACE Space No. TBD ** (see (e) below) — $43,000

    (iii) Options shown on the attached Schedule B — $ TBD

    (iv) Purchase Price (exclusive of settlement costs, prorated amounts, unit owner association fees and contributions and prepaid items) — $578,900

    (b) Such purchase price being payable to Purchaser as follows:

    (i) Deposit — $26,795

    (ii) Option Payments, as defined below, made for options shown on Schedule B ** (see (f) below) 50% DUE @ SELECTION TIME — $TBD

    (iii) Mortgage proceeds (if any) 90% LTV — $521,010

    (iv) Total of (b)(i), (ii), and (iii) — $547,805

    (v) Balance of Purchase Price due at Settlement (exclusive of settlement costs, prorated amounts of prepaid items) — $31,095

    (c) The Deposit and any additional deposit (collectively, the "Deposit") will be held in an interest-bearing escrow account pursuant to Section 42-1904.09 of the Condominium Act. At settlement on the purchase and sale of the Property ("Settlement"), the Deposit will be applied toward payment of the Purchase Price and any interest earned on the Deposit will be paid or credited to Purchaser. If this Agreement is terminated for any reason, the Deposit (and all

-1-

7001095-7

inspection, the Pre-Settlement Inspection Form shall be completed and executed by Purchaser and by a representative of Seller. Purchaser shall attend such inspection and participate in completing the Pre-Settlement Inspection Form prior to Settlement. Failure of Purchaser to make the inspection at the date and time specified by Seller shall constitute full acceptance of the Property by Purchaser. Any item not listed on such Pre-Settlement Inspection Form shall be conclusively deemed fully accepted by Purchaser. Upon acceptance of the deed by Purchaser, Purchaser agrees to hold Seller free from liability for any defects not specifically noted in said Pre-Settlement Inspection Form, except as otherwise provided in the Limited Warranty.

(i) **Seller Obligation.** At Settlement, Seller shall execute and deliver all documents necessary to effect and complete the Settlement, including but not limited to (i) a Special Warranty Deed sufficient to convey fee simple title to the Property as herein provided, and (ii) the settlement statement.

(j) **Purchaser Obligation.** At Settlement, Purchaser shall execute and deliver all documents and all funds necessary to complete Settlement, including, but not limited to (i) the remainder of the Purchase Price and all settlement costs due from Purchaser; (ii) the settlement statement; and (iii) all mortgage and title company documents required by the lender or title company.

5. **Agent.**

(a) Seller and Purchaser acknowledge that this Agreement was procured through the services of The Mayhood Company without the intervention of any other cooperating broker, except as expressly recognized elsewhere herein on the date of Purchaser's execution of this Agreement. Purchaser shall indemnify Seller against the claim of any other broker, including any attorney's fees incurred as a result of such claim. Seller hereby recognizes Agent as the agent responsible for procuring this transaction, and Seller agrees to pay Agent a sales commission upon, and only upon, the consummation of Settlement and recordation of the deed pursuant to this Agreement, pursuant to a separate agreement between Agent and Seller. This sales commission shall not be deemed earned or payable until the completion of Settlement hereunder and recordation of the deed from Seller to Purchaser. Seller hereby authorizes and directs the settlement attorney to pay such commission from its proceeds at Settlement.

(b) Acknowledgment: Agent and any other cooperating broker hereby recognize and agree that no commission is due hereunder unless and until this sale is consummated by Settlement and all funds are collected. Failure to consummate the sale for any reason will relieve Seller of and from any obligation to any agent or broker, co-op or otherwise, for any commission or otherwise.

(c) Purchaser recognizes that Agent receives all information as to Seller's projected completion date from Seller and that in this regard Agent is merely acting as a conduit of information and not in any respect as Agent of Seller. Agent shall not be responsible in any manner whatsoever to Purchaser for failure or inability of Seller to meet Seller's projected completion date, and Purchaser's rights and remedies with respect to any delay shall be governed solely by the provisions of Paragraph 9 of this Agreement. Purchaser acknowledges and agrees that Seller shall not be responsible for any information given by Agent or any cooperating broker which is not included in the Condominium Documents or which is at variance with the statements or provisions contained therein. The cooperating broker has no authority, apparent or actual, to act on behalf of Seller.

6. **Risk of Loss.**

Seller assumes the risk of loss or damage to the Property by fire or other casualty until Settlement occurs as provided in this Agreement.

7. **Title.**

(a) The Property shall be sold free of monetary encumbrances, except as otherwise provided herein. Title at Settlement is to be good of record and fully insurable by a title insurance company at regular rates, subject, however, to the terms and conditions of the Condominium Act, the Condominium Instruments, covenants, easements, rights-of-way, conditions and restrictions of record, such other restrictions as are specifically set forth herein, ordinances and regulations of municipal or other governmental authorities, any other matters or easements which may be observed by an inspection of the Property, Purchaser's deed of trust, and to liens or other matters over which the title company agrees to insure.

(b) If title to the Property cannot be so conveyed to Purchaser at Settlement for any reason whatsoever, including, but not limited to, the filing by third parties of any impediments to title, the Deposit and all interest accrued thereon, if any, shall be returned and this Agreement shall be declared null and void at the option of Purchaser or Seller, unless the defects are of such character that they may be remedied by Seller and only if Seller elects to undertake to cure such defects. In the event that legal steps are necessary to remove any impediment to title, such action, if Seller elects to undertake the same, will be taken promptly by and at Seller's expense,

7001095-7

written consent of Seller which may be withheld in its sole and absolute discretion. Any purported assignment of this Agreement by Purchaser in violation hereof shall be voidable at the option of Seller. Seller's refusal to consent to an assignment hereof shall not entitle Purchaser to terminate this Agreement or give rise to any claims for damages against Seller. Seller may assign its rights hereunder.

(b) The terms and provisions of this Agreement shall not survive the Settlement hereunder. Notwithstanding anything to the contrary contained herein, the provisions of Paragraphs 3, 4(c), 5(b), 7(c), 8(b), 9, 10, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23 and 26 shall survive Settlement and the Addenda, Exhibits, and Schedules shall survive Settlement to the extent reflected therein. Purchaser's acceptance of delivery at Settlement shall relieve Seller of any further obligation under this Agreement.

(c) Purchaser is expressly prohibited from recording, and covenants not to record, this Agreement, any memorandum thereof or any lis pendens, whether or not Seller is at any time in default hereof, and upon any recordation or attempted recordation, Purchaser shall be in default of this Agreement, and Seller shall have all rights and remedies to which it is entitled pursuant to Paragraph 15(a) hereof with respect to such default. It is acknowledged and agreed by Purchaser and Seller that the aforesaid liquidated damages are not a penalty. Seller is empowered hereunder to seek immediate and summary injunctive relief against Purchaser if Purchaser places any impediment to title among the land records, together with costs and attorney's fees incurred by Seller in connection therewith.

(d) This Agreement and its addenda, if any, contains the final and entire agreement between the parties hereto, and the parties hereto shall not be bound by any terms, conditions, statements, warranties, or representations, oral or written, not herein contained. Purchaser agrees that Purchaser will rely only upon representations set forth in this Agreement. No action or inaction by Seller shall constitute a waiver of any default or obligation under this Agreement and no waiver of any default or obligation shall be effective unless it is in writing and signed by Seller.

(e) This Agreement is not severable except with the prior written consent of Seller. If any part of this Agreement is unenforceable or severed for any reason, then at Seller's election this Agreement may be terminated upon written notice to Purchaser and upon such termination Seller shall return Purchaser's Deposit, in which event the parties hereto shall be relieved of any and all further liability hereunder.

(f) Purchaser acknowledges that Purchaser has read and understands the terms and conditions set forth in Paragraphs 1 through 26 and that Purchaser and Seller are bound by the terms hereof.

(g) Other than appropriate completion of the blanks contained in this agreement, typewritten of handwritten language added to the printed contractual form (excluding addenda) is added for clarification only. In no event shall such additional typewritten or handwritten material take precedence over the printed form (excluding addenda). In the event of any ambiguity or inconsistency between the printed form and the handwritten or typewritten additions, the printed form shall take precedence.

(h) If this Agreement is signed by an individual who is unmarried at the time of execution hereof, and at the time of Settlement such individual is then married, Purchaser shall indemnify Seller from any loss that may arise by reason of failure of Purchaser's spouse to execute any applications, mortgages, notes or other documents required by the lender. If Purchaser is married and Purchaser's spouse is not also a purchaser under this Agreement, then Purchaser shall be responsible for such spouse executing the mortgage loan documents required by the lender and the failure of such spouse to do so shall not release Purchaser from any obligations under this Agreement.

(i) The term "mortgages" as used herein shall include deeds of trust and vice versa.

(j) All notices required or permitted herein shall be in writing and delivered to the person to whom such notice is directed at the address designated herein by any of the following methods of delivery: (i) first-class mail, postage prepaid, (ii) overnight delivery by a recognized courier service, or (iii) by hand delivery. Notices shall be deemed to be effective on the day after the day it is mailed or given to a delivery service.

(k) This Agreement may be executed in counterparts, and all such counterparts shall be deemed to constitute one and the same Agreement, notwithstanding that all parties are not signatures to the same counterpart.

(l) ALL FUNDS TO BE DELIVERED BY PURCHASER UNDER THIS AGREEMENT SHALL BE IN THE FORM OF GOOD, IMMEDIATELY AVAILABLE FUNDS. IF FOR ANY REASON A CHECK IS RETURNED FOR INSUFFICIENT FUNDS OR OTHERWISE NOT HONORED BY THE INSTITUTION UPON WHICH IT IS DRAWN, THEN PURCHASER SHALL BE IN DEFAULT UNDER THIS AGREEMENT AND SELLER SHALL HAVE THE RIGHT TO EXERCISE ANY AND

Date: 5·12·05

SSN: 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

Date: _____

SSN: _____

Date: 5-13-05

Date: 5/12/05

**AGENT FOR PURCHASER:**

The following cooperating broker is hereby recognized:

Firm: Ken Taylor Real Estate

Address: 1629 16th St NW
WDC 20009

Agent: P. Richard Newton

D.C. Real Estate License Number: SP98358517

Commission: $ 11,578 only in the event of Settlement.

Cooperating broker not paid commission on Purchaser's options.

**PURCHASER(S):**

_____
(Purchaser)

Address: 1300 N St. #714, WDC 20005

Telephone: 202·797·1015 (Home)

202·668·4467 (Office)

_____
(Purchaser)

Address: _____

Telephone: _____ (Home)

_____ (Office)

**SELLER:**

Faison-Kalorama, LLC, a North Carolina limited liability company

By:  FCD-1997 G.P., Inc., a North Carolina Corporation, its Manager

By: _____
Name:
Title:

Address: c/o Faison Development
121 West Trade Street, 27th Floor
Charlotte, NC 28202

Telephone: (704) 972-2672

**AGENT FOR SELLER:**

THE MAYHOOD COMPANY

By: _____

-15-

7001095-7

THE DELANCEY LOFTS CONDOMINIUM
ADDENDUM #1 TO CONDOMINIUM UNIT PURCHASE AGREEMENT
AFFIRMATION OF OWNER OCCUPANCY, LEASING AND RESALE ADDENDUM

This Addendum to the Condominium Unit Purchase Agreement ("Addendum") is made and entered into this __12th__ day of __MAY__, 2005 by and between __Paul Richard Newton__ ("Purchaser") and Faison-Kalorama, LLC, a North Carolina limited liability company ("Seller") on the Property in The Delancey Lofts Condominium identified as follows:

Condominium Unit No. __213__

Property Address:    1701 Kalorama Road, N.W.
                     Washington, DC 20009

WHEREAS, Purchaser and Seller entered into a certain Purchase Agreement, dated __5/12__, 20__05__, and written addenda (if any) for the Property ("Agreement").

NOW THEREFORE, it is mutually agreed that the following provisions be added:

1. Purchaser hereby represents to Seller that it is purchasing the Unit as his primary, year round residence and covenants and agrees not to lease the Unit until after the Purchaser has occupied the Unit as his principal year round residence for 12 consecutive months. In the event that Purchaser violates this covenant and agreement, Purchaser shall pay to Seller all rent or other payments received in violation of this covenant and agreement. Seller shall have all remedies at law and in equity to enforce this covenant and agreement against Purchaser, including without limitation injunctive relief and specific performance.

2. Purchaser hereby agrees that if Purchaser sells the Unit within the 12-month period following Settlement, Seller shall receive fifty percent (50%) of the Net Sales Proceeds, as defined below, from the sale of the Condominium Unit by the Purchaser. In order to induce Seller to sell the Condominium Unit to Purchaser, Purchaser agrees that the deed of conveyance from Seller conveying the Condominium Unit to Purchaser shall contain a covenant in favor of the Seller for fifty percent of the Net Sales Proceeds, as defined below, of the sale of the Condominium Unit by the Purchaser if such sale occurs within the 12-month period following the date of Purchaser's acquisition of title to the Condominium Unit. For purposes of this Leasing and Resale Addendum, "Net Sales Proceeds" shall mean the total sales price of the Condominium Unit appearing on the settlement statement of the Purchaser, as seller, less the Purchase Price paid by Purchaser under this Agreement and less closing costs paid by Purchaser to bona fide third parties unrelated to the Purchaser in connection with Purchaser's purchase of the Unit. Notwithstanding the foregoing, the provisions of this Addendum shall not apply if Purchaser is required to sell or lease the Unit prior to expiration of the 12-month period following Settlement as a result of Purchaser's involuntary loss of employment.

This Addendum is incorporated into the Agreement by this reference and the provisions of this Addendum shall survive Settlement. All other terms and conditions of the Agreement shall remain in full force and effect. This Addendum is not a novation of the Agreement.

Date: __5-12-05__                               PURCHASER _____
                                                (Purchaser)

Date: _____                            _____
                                                (Purchaser)

1

Date: 5-15-05

Date: 5/12/05

**SELLER:**

Faison-Kalorama, LLC, a North Carolina limited liability company

By: FCD-1997 G.P., Inc., a North Carolina corporation, its Manager

By: _____
Name:
Title:

**AGENT FOR SELLER:**

THE MAYHOOD COMPANY

By: _____

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Action No: 1:06 CV 02003 RWR

PAUL RICHARD NEWTON,

           Plaintiff,

v.

FAISON-KALORAMA, LLC,

           Defendant.

AFFIDAVIT OF NANCY L. FARMER

Nancy L. Farmer, being first duly sworn, deposes and says:

1. I am over 18 years old and have personal knowledge of the facts stated in this affidavit.

2. I am Director of Risk Management/Corporate Compliance for Faison & Associates, LLC ("F&A"). One of my job duties is to keep the corporate information of the numerous Faison entities maintained by F&A.

3. Faison-Kalorama, LLC is a North Carolina limited liability company. Its sole member is FCD-1997 G.P., Inc. ("FCD-1997").

4. FCD-1997 is a North Carolina corporation formed, as its name suggests, in 1997.

5. FCD-1997's registered office address, registered mailing address, and principal mailing address all are in Charlotte, North Carolina. The applicable page from the North Carolina Secretary of State's office is attached as Exhibit A.

6. In addition to North Carolina, FCD-1997 is qualified to do business in Delaware, the District of Columbia, Florida, Georgia, Maryland, South Carolina, Texas and Virginia.

7. FCD-1997 has been involved in real estate projects located in Florida, Maryland, New Jersey, North Carolina, Tennessee, Texas, Virginia and West Virginia. To the best of my

knowledge, The Delancey Lofts Condominium at 1701 Kalorama Road is the only District of Columbia project in which FCD-1997 has been involved.

8. Over the years FCD-1997 has held general partner, limited partner and member interests in at least 20 different entities organized and/or qualified in various states ("Faison Affiliates"). Currently, FCD-1997 holds a member interest in two North Carolina limited liability companies, a general partner interest in a Florida limited partnership, a general partner interest in a Georgia limited partnership, and general partner interests in nine North Carolina limited partnerships.

9. Although FCD-1997 has done business in multiple states, its headquarters is in Charlotte, North Carolina, and its day-to-day business is conducted there. FCD-1997's directors are located in Charlotte, and eleven of FCD-1997's twelve officers are based in Charlotte. All fundamental company decisions are made in Charlotte.

10. All of FCD-1997's Faison Affiliates are headquartered in Charlotte. F&A also has its headquarters in Charlotte and supplies all of the employees who conduct the business of FCD-1997.

This 29th day of December, 2006.

*Nancy L. Farmer*
Nancy L. Farmer

Sworn to and subscribed before me,
this 29th day of December, 2006.

*Susan L. Bracken*
Notary Public

(Official Seal)

Susan L. BRACKEN
Notary's printed or typed name

My commission expires: 1/12/2008



Elaine F. Marshall
Secretary

North Carolina
DEPARTMENT OF THE
SECRETARY OF STATE

PO Box 29622 Raleigh, NC 27626-0622 (919)807-2000

**Corporations**
- Corporations Home
- Important Notice
- Corporations FAQ
- Tobacco Manufacturers
- Dissolution Reports
- Non-Profit Reports
- Verify Certification
- Online Annual Reports
- KBBE B2B Annual Reports

**Links**
- Secretary Of State Home
- Register for E-Procurement
- Dept. of Revenue
- SOSID Number Correction

**Legislation**
- 1999 Senate Bills
- 2001 Bill Summaries
- Annual Reports 1997
- Corporations 1997

**Search**
- By Corporate Name
- For New Corporation
- By Registered Agent

**Online Orders**
- Start An Order
- New Payment Procedures

**Contact Us**
- Corporations Division
- Secretary of State's web site

**Print**
- Printable Page (New Window)
- Printable Page (This Window)
- Hide Menu

Date: 12/29/2006

Click here to:
View Document Filings |
Print apre-populated Annual Report Form | Annual Report Count | F
an Annual Report |

### Corporation Names

| Name | Name Type |
|---|---|
| NC FCD-1997 G.P., INC. | Legal |

### Business Corporation Information

| | |
|---|---|
| SOSID: | 0416850 |
| Status: | Current-Active |
| Date Formed: | 1/30/1997 |
| Citizenship: | Domestic |
| State of Inc.: | NC |
| Duration: | Perpetual |

### Registered Agent

| | |
|---|---|
| Agent Name: | Faison, Henry J |
| Registered Office Address: | 121 W Trade St<br>1900 Interstate Tower<br>Charlotte NC 28202-5399 |
| Registered Mailing Address: | 121 W Trade St<br>1900 Interstate Tower<br>Charlotte NC 28202-5399 |
| Principal Office Address: | 121 W Trade St.<br>Suite 2550<br>Charlotte NC 28202-5399 |
| Principal Mailing Address: | No Address |

### Stock

| Class | Shares | No Par Value | Par Value |
|---|---|---|---|
| COMMON | 10 | Yes | N/A |

For questions or comments about the North Carolina Secretary of State's web site, please send e-mail to **Webmaster**.