**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**PAUL RICHARD NEWTON**

      **PLAINTIFF,**

                            **Civil No. 1:06 CV 2003 TFH**

**v.**

**FAISON- KALORAMA, LLC.**

                            **JURY DEMAND**

        **DEFENDANT**

---

## AMENDED VERIFIED COMPLAINT

NOW COMES the plaintiff, Paul Richard Newton, an individual, and brings this

amended complaint against Faison-Kalorama LLC and says as follows:

### PARTIES

1. The plaintiff is a resident and citizen of the District of Columbia.

2. The defendant is claims to be a North Carolina limited liability company,

   with authority to do business in the District of Columbia.

### JURISDICTION

3. This Court has jurisdiction over the parties in that all events alleged in the complaint took place within the District of Columbia, the real estate at issue is within the District of Columbia and the defendant conducts business within the District of Columbia.

4. The Court has personal and subject matter jurisdiction pursuant to *SCR Civil 13.*.

## STATEMENT OF FACTS

5. On or about May 12, 2005 the plaintiff entered into an agreement to purchase unit 213, later designated as Unit M-2, at the Delancey Lofts Condominium, located at 1701 Kalorama Street, Washington, D.C.,recorded in the land records of the DC Recorder of Deed as Square 2566 Lot 29, in fee simple.

6. Before signing the purchase contract the plaintiff questioned language in a addendum to the purchase contract titled in pertinent part "AFFIRMATION OF OWNER OCCUPANCY, LEASING AND RESALE ADDENDUM" relating to the seller, Faison-Kalorama, LLC, demanding the right to receive 50% of any profit from the sale of the unit if it were sold within one year of the plaintiff's purchase and ,separately, a right to receive one hundred per cent (100%) of any rents received by the purchaser within the first twelve months of purchase.

7. The seller's agent, Kristen Alberts, stated that the addendum was not being enforced because it was legally unenforceable and that in any case the addendum language would not appear on the deed to be conveyed.

8. Based on those assurances by Alberts, the plaintiff signed the purchase contract, and the addendum for the purchase of unit 213.

9. On at least two occasions, in late May 2005, and after the plaintiff's signing the contract, the plaintiff again sought specific assurances that the language requiring an

seller, Faison, fifty per cent (50%) of any profit above the purchase price and one

hundred per cent of any rent income for the first year **would   not** be a part of the deed

conveying fee simple title to the Plaintiff.   Again, the Plaintiff was assured again by Ms.

Alberts, the agent for the seller, that the language **would not** be a part of the deed from

the seller to the Plaintiff conveying fee simple title. The same representations were made

to other purchasers.  Please see Plaintiff's Exhibit 1, attached hereto.  At all  times

relevant to this complaint Ms. Alberts was the real estate agent of the defendant.

10.  After the signing of the contract, the seller provided a copy of the condominium

declaration which included a copy of the "Sample Deed" the seller would use to convey

title which did not include any covenant restraining the purchaser's right of alienation.

The "Deed" is included at Exhibit 2, hereto.

11.  On  the date of closing no one appeared on behalf of the seller at the closing.  At the

designated closing time, the settlement agents were "tied up" with a "complicated"

closing with someone else.  However, the Plaintiff, seated in a separate room alone,

signed the closing papers which were eventually provided by the settlement agent and

the purchase price already had been wired directly to the settlement agent by the

Plaintiffs mortgage lender  to be paid to  the sellers.

12.  A copy of the  deed was provided at the end of  the closing after all documents

required to be signed  by the plaintiff had been   signed..

13.   To the utter surprise of  the Plaintiff,  the deed covenant which was not to appear in

the deed was in fact made a part of the deed. See Exhibit 5 attached hereto.

14. To the best of the knowledge of the  Plaintiff, he never signed any covenant

document granting any rights to the seller.

15. In May 2006, the Plaintiff received an expression of interest in purchasing his unit for $699,000 approximately one hundred fifty thousand dollars ($150,000.00) more than the Purchaser's purchase price. However, the Plaintiff had been advised by a title company that the

Plaintiff could not convey clear title, unless the deed covenant at issue was removed. See Plaintiff's Exhibit 4, attached hereto. The plaintiff was unable to enter into a contract to sell the property.

16. On  May 5, 2006  the Plaintiff, through counsel, asked the defendant to voluntarily remove the deed covenant.

17.  On or about May 16, 2006 the defendant , through its counsel, refused to remove the deed covenant but offered to remove the deed covenant when and the defendant  had sold all units at the condominium project.

18.  The deed covenant imposed by the defendant in the deed is intended to unjustly enrich the defendant and serves no public policy.

19.  The deed covenant provision in the purchase contract addendum and deed was not the result of a negotiation process, Plaintiff did not bargain for or negotiate for the deed covenant provision which was written totally by the seller , and  the Plaintiff received no consideration, for the imposed  deed covenant.

20. At no time was the plaintiff told that the so-called deed covenant would  attach to the land. and, as a consequence, impair the plaintiff's fee simple ownership.

21. The plaintiff is forced to bring this action after all efforts to resolve the matter have failed and the defendant has specifically refused to voluntarily remove its lien. As a

direct result of the deed covenant imposed by the seller, the Plaintiff has been unable to consummate sell his property in the manner and at the price he elects which is his right as a fee simple owner, to his pecuniary detriment, and ,separately, to exercise his full rights of ownership.

## COUNT I

### Fraudulent Misrepresentation, Fraud in the Inducement, Negligent Misrepresentation
### Tort

22. Plaintiff hereby re-alleges Paragraphs 1 through 21 as if fully stated.

23. The specific statements made by Kristen Alberts, as agent for the defendant, that the deed ro be provided by the seller would not include the covenant restraining the plaintiff's rights of alienation, were false , were material to the sales transaction at issue in this litigation, and the seller's agent, Alberts, knew or should have known of there falsity, and the statements that the covenant would not be a part of the deed were intended to deceive the plaintiff, were made before and after the plaintiff's signing the contract, and the plaintiff relied upon the statements made by Alberts in entering into the contract.

24. At all times relevant Alberts was an agent of the Seller.

25. The misrepresentations made by Albert induced the plaintiff to enter into the contract to purchase, and further to go to closing, only to be presented with a deed containing the covenant restraining his rights of alienation as a fee simple owner.

26. As a result of the misrepresentations as detailed herein above the plaintiff has suffered impairment of his rights of alienation as the fee simple owner of the property at issue in this litigation.

**WHEREFORE** the plaintiff seeks removal of the fraudulently procured deed covenant and that the plaintiff be awarded tort damages in an amount subject to proof, his reasonable attorney fees, the costs of litigation and any other such relief may found just and appropriate.

## COUNT II

### Slander of Title
### Tort

27. Plaintiff hereby re-alleges Paragraphs 1 through 26 as if fully stated herein.

28. The deed covenant imposed by the defendant is an unreasonable restraint on alienation which is fundamentally incompatible with the fee simple absolute ownership of the plaintiff and was not bargained for by the parties and the Plaintiff receive no consideration from the defendant to bind any such promise.

29. The language of the Addendum to the purchase contract, at issue, was drafted only by the Defendant and appears as a standardized part of every contract for the purchase of units at the Delancey Lofts Condominium and as such is an adhesion element of an adhesion contract.

30. The restraint represented by the Defendant's imposed deed covenant only purpose is to allow the seller to participate in any appreciation in the value of a property it has sold in fee simple. And serves no cognizable public purpose.

31. The imposed deed covenant cast a cloud on the title and impaired the vendibility of the plaintiff's property.

32. The defendant refused to release the imposed covenant.

33. As a proximate result of the defendant's refusal to release the imposed covenant, the Plaintiff lost a prospective profitable sale of the property in the amount of one hundred

and fifty thousand dollars above the mortgage price constituting special damages in this

matter.

34. The defendant refusing release of the improvident deed covenant was malicious, with

evil

motive, for no proper purpose , in reckless disregard of the Plaintiff's rights and akin to

racketeering..

35. This court has the authority to reform the deed and to find that the imposed covenant

is invalid and unenforceable.

**WHEREFORE** , Plaintiff respectfully requests that 1) the Court find that the imposed

covenant is invalid and unenforceable, 2)   the Court require release of  the imposed

covenant., 3)       the Plaintiff be awarded compensatory and exemplary damages , his

attorney fees and costs in the matter, and 4) such other relief as the Court may deem just

and proper in the matter.

### COUNT III

### Violations of *D.C. Code 28-2904(2003)*
### Unlawful Trade Practices

31.   Plaintiff  hereby re-alleges paragraphs 1 through 35 as if fully stated herein.

32. Defendant, by and through its agent, Kristen Alberts, stated that the addendum at

issue in the suit would not be a part of the deed as previously averred in paragraphs

6,7,and 9 herein above.

33. The statements by Alberts were made with full knowledge of their falsity; in the

alternative, Alberts knew or should have known whether such statements were in fact true

in her role as a real estate agent for the Seller.

34. The statements made by Alberts were intended to induce the Plaintiff to sign the

purchase contract and addendum and was a misrepresentation as to a material fact which had a tendency to mislead the Plaintiff in violation of *D.C. Code 28-3904(e).*

35.  As result of the above misrepresentation of a material fact the Plaintiff has suffered unreasonable impairment of his rights, as a fee simple owner, to lease his unit and retain such rental income for no proper purpose.

36.  As a result of the above misrepresentation   as detailed in paragraphs 6,7 and 9 herein above the Plaintiff has suffered  a pecuniary loss because of unreasonable impairment of his right to freely sell his property at any time and at any price he elected without giving over to the Defendant fifty per cent (50%) of any profit.

**WHEREFORE,** Plaintiff respectfully requests that he 1) be awarded his compensatory damages subject to proof,  2) be awarded treble damages and punitive damages, 3) be awarded his attorney fees and costs, and  4) be awarded any other relief  this Court may deem just and proper in this matter.

**JURY DEMAND**

37.  Plaintiff demands trial by jury on all counts.

**VERIFICATION**

*District of Columbia: ss*

I, Paul Richard Newton, first being duly sworn on oath depose and state that the foregoing Verified Complaint has been read and subscribed by me and the things contained therein are true to the best of my knowledge, information and belief.

Paul Richard Newton

Subscribed and sworn to before me this 24 day of November, 2006.

My commission expires _____    **Zainab Kamara**
**Notary Public District of Columbia**
**My Commission Expires June 30, 2011**    NOTARY PUBLIC

Respectfully submitted,

Johnny R. Galloway DC Bar No. 458056
1516 P Street, NW
Washington, D.C.  20005
Tel:  (202)726.5426
Fax: (202)726.6629; 588.8819

johngalloway@email.com

*Attorney for Plaintiff*

VERIFICATION

DISTRICT OF COLUMBIA: ss

I, Paul Richard Newton, first being duly sworn on oath depose and state that the foregoing Answer and Counterclaim have been read and subscribed by me and that the contained therein are true and to he best of my knowledge, information and belief.

_____
Paul Richard Newton

Subscribed and sworn to before me this 15ᵗʰ day of June, 2006.

Traci S. Hajducsek
Notary Public, District of Columbia
My Commission Expires 8-31-2009

_____
NOTARY PUBLIC

My commission expires _____

april 5, 2007

Respectfully submitted,

_____
Johnny R. Galloway DC Bar 458056
johngalloway@email.com
1516 P Street, NW
Washington, D.C.  20005
Attorney for Plaintiff

**Exhibit 1**

**SALES CONTRACT ADDENDUM**

**THE DELANCEY LOFTS CONDOMINIUM**
**ADDENDUM #1 TO CONDOMINIUM UNIT PURCHASE AGREEMENT**
**AFFIRMATION OF OWNER OCCUPANCY, LEASING AND RESALE ADDENDUM**

This Addendum to the Condominium Unit Purchase Agreement ("Addendum") is made and entered into this ___12th___ day of ___MAY___, 2005 by and between ___Paul Richard Newton___ ("Purchaser") and Faison-Kalorama, LLC, a North Carolina limited liability company ("Seller") on the Property in The Delancey Lofts Condominium identified as follows:

Condominium Unit No.     ___213___

Property Address:     1701 Kalorama Road, N.W.
Washington, DC 20009

WHEREAS, Purchaser and Seller entered into a certain Purchase Agreement, dated ___5/12___, 20__05__, and written addenda (if any) for the Property ("Agreement").

NOW THEREFORE, it is mutually agreed that the following provisions be added:

1.      Purchaser hereby represents to Seller that it is purchasing the Unit as his primary, year round residence and covenants and agrees not to lease the Unit until after the Purchaser has occupied the Unit as his principal year round residence for 12 consecutive months. In the event that Purchaser violates this covenant and agreement, Purchaser shall pay to Seller all rent or other payments received in violation of this covenant and agreement. Seller shall have all remedies at law and in equity to enforce this covenant and agreement against Purchaser, including without limitation injunctive relief and specific performance.

2.      Purchaser hereby agrees that if Purchaser sells the Unit within the 12-month period following Settlement, Seller shall receive fifty percent (50%) of the Net Sales Proceeds, as defined below, from the sale of the Condominium Unit by the Purchaser. In order to induce Seller to sell the Condominium Unit to Purchaser, Purchaser agrees that the deed of conveyance from Seller conveying the Condominium Unit to Purchaser shall contain a covenant in favor of the Seller for fifty percent of the Net Sales Proceeds, as defined below, of the sale of the Condominium Unit by the Purchaser if such sale occurs within the 12-month period following the date of Purchaser's acquisition of title to the Condominium Unit. For purposes of this Leasing and Resale Addendum, "Net Sales Proceeds" shall mean the total sales price of the Condominium Unit appearing on the settlement statement of the Purchaser, as seller, less the Purchase Price paid by Purchaser under this Agreement and less closing costs paid by Purchaser to bona fide third parties unrelated to the Purchaser in connection with Purchaser's purchase of the Unit.   Notwithstanding the foregoing, the provisions of this Addendum shall not apply if Purchaser is required to sell or lease the Unit prior to expiration of the 12-month period following Settlement as a result of Purchaser's involuntary loss of employment.

This Addendum is incorporated into the Agreement by this reference and the provisions of this Addendum shall survive Settlement.  All other terms and conditions of the Agreement shall remain in full force and effect.  This Addendum is not a novation of the Agreement.

**PURCHASER**

Date: ___5.12.05___

_____
(Purchaser)

**Exhibit 2**

**SAMPLE  DEED**

## SAMPLE DEED

### THIS DEED

Made this _____ day of _____, 2005, by and between Faison-Kalorama, LLC, a North Carolina limited liability company (the "Grantor"), and _____ (hereinafter the "Grantee(s)");

WITNESSETH, that for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, Grantor does hereby grant and convey unto the Grantee(s), in fee simple as _____, the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto belonging, situate, lying and being in the District of Columbia, namely:

Lot _____ in Square _____, more particularly described as Condominium Unit _____ in The Delancey Lofts (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded _____, _____, as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded _____, _____ as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Plat and Plans recorded _____, _____, in Condominium Book _____ at page _____ in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").

TOGETHER with all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit as undivided interest (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

The Deed is delivered and accepted subjected to: taxes and assessments for the current calendar year and all subsequent years; zoning ordinances, restrictions, prohibitions and other requirements imposed by governmental authority; conditions, restrictions, reservations, limitations and easements of record, if any, but this reference shall not operate to reimpose same; all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform as evidenced by the signature(s) on

-1-

1413206-1

this instrument. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

AND the said Grantor hereby convenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this _____ day of _____, 2005, Faison-Kalorama, LLC has caused this Deed to be executed by FCD-1997 G.P., Inc., its Manager, as its act and deed, on behalf Faison-Kalorama, LLC, a North Carolina limited liability company.

> FAISON-KALORAMA, LLC, a North Carolina
> limited liability company
>
> By:    FCD-1997 G.P., Inc., a North Carolina
> corporation, its Manager
>
>
> By:    _____
>            Name:
>            Title:

I, _____, a Notary Public in and for the District of Columbia, do hereby certify that _____, who is personally well known to me as the _____ of FCD-1997 G.P., Inc., Manager of Faison-Kalorama, LLC, executed the foregoing Deed bearing the date of the ___ day of _____, 2005, personally appeared before me in the said District of Columbia and acknowledged the same to be his act and deed, and that he executed the same for the purposes therein contained.

GIVEN under my hand and seal this _____ day of _____, 2005.

_____
Notary Public

My Commission Expires: _____

Exhibit 3

**AFFIDAVIT OF DIANE L. KEELEY**

## AFFIDAVIT OF DIANE L. KEELEY

I, Diane L. Keeley, an adult older than twenty-one years of age, residing at 6320 Howe Place, Springfield, Virginia being duly sworn, deposes and says:

1. I entered into a contract purchase condominium unit #304 at the Delancey Lofts, located at 1701 Kalorama Rd., NW in Washington, D.C. on or about May 4, 2005.

2. I specifically recall that at the time I signed my contract to purchase, on or about May 4, 2005, I dealt with Kirsten Alberts as the real estate agent representing the seller, Faison-Kalorama, LLC.

3. I specifically recall that during the meeting on or about May 4, 2005, with Kristen Alberts, at which I was urged to sign my purchase contract, Ms. Alberts told me, before my signing the contract, that the provisions in the contract addendum, which would require me to give the seller, Faison-Kalorama, fifty percent of any resell profit and, or, one hundred per cent of rents for the unit I was contracting to purchase after my closing on the purchase of the unit was not being enforced by the Seller and was unenforceable in the District of Columbia.

3. Ultimately, I did not purchase the unit because of my special concerns about the limited means to vacate the unit in case of fire which was discovered during the "walk through inspections" conducted in anticipation of closing on the purchase.

4. I was released from the contract to purchase, with a full refund of my deposit, by the seller, Faison-Kalorama LLC.

5. I have received nothing in return for this statement nor have I been promised anything for making this statement.

6. I make this statement with knowledge of the laws against perjury.

Diáne L. Keeley

~~District of Columbia~~: ss
State of VA

Subscribed and subscribed to before me this 14th day of October 2006.

NOTARY PUBLIC

My commission expires 10-31-2007

**Exhibit 4**

**TITLE OPINION LETTER**

# NATIONAL TITLE CORPORATION

1516 P Street NW · Washington · District of Columbia · 20005
*phone* 202·466·6206   *fax* 202·466·8924   *email* nationalt@earthlink.net

July 19, 2006

TO WHOM IT MAY CONCERN:

I am writing this letter as President of National Title Corporation and an agent of First American Title Insurance Company.

We have reviewed the District of Columbia Purchase Money Deed (the "Deed") dated February 15, 2006 and recorded February 17, 2006 between Faison-Kalorama, LLC and Paul Richard Newton for Condominium Unit No. M-2 in The Delancey Lofts Condominium.

The covenant set forth in the Deed which requires the "Grantee" to pay the "Grantor" 50% of the Net Sales Proceeds in the event of a sale within 12 months is a covenant which must be included as a title exception in any new owner's or lender's title insurance policy.

In the event this exception to title (assumes the "Grantee" did not make the required payment to "Grantor") was included in any new title policy, in my opinion it would be almost impossible to sell the condominium unit within the initial 12 month period.

Sincerely,

NATIONAL TITLE CORPORATION

By:     Glenn D. Simpson
        President

**Exhibit 5**

**DEED AS RECORDED**





After Recording Please Mail To:
Champion Title & Settlements, Inc.
1133 Connecticut Avenue, N.W. 11th Floor
Washington, DC 20036

### DISTRICT OF COLUMBIA PURCHASE MONEY DEED

THIS DEED, made this 15th of February, 2006, by and between **Faison-Kalorama, LLC, a North Carolina limited liability company**, (hereinafter the "Grantor") and **Paul Richard NEWTON**, unmarried (hereinafter the "Grantee(s)");

WITNESSETH, that for and in consideration of the sum **Five Hundred Seventy-Eight Thousand Nine Hundred and 00/100 ($578,900.00)** and other good and valuable consideration, Grantor does hereby grant and convey unto the Grantee(s), in fee simple as **for his sole and separate equitable estate,** the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto bellowing, situate, lying and being in the District of Columbia, namely:

> **Unit No. M-2 in the condominium known as "the Delancey Lofts Condominium", according to the Declaration of Condominium dated December 12, 2005 and recorded December 13, 2005 as Instrument No. 2005178568 among the Land Records of the District of Columbia, as amended by First Amendment to Declaration of Delancey Lofts Condominium dated January 25, 2006 and recorded January 26, 2006 as Instrument No. 2006012474 among said Land Records, and the Bylaws of Condominium relating thereto dated December 12, 2005 and recorded December 13, 2005 as Instrument No. 2005178569 among said Land Records, and as per plat recorded in the Office of the Surveyor for the District of Columbia in Condominium Book 56 at page 32.**

> **TOGETHER WITH an undivided percentage share interest in the Common Elements of said "The Delancey Lofts Condominium", as set forth in said Declaration of Condominium and the Exhibits thereto.**

> **Said Condominium project is situate on Lot 90 in Square 2566 in a subdivision made by Charles H. Tompkins and Lida R. Tompkins, as per plat recorded in Liber No. 71 at folio 8 in the Office of the Surveyor for the District of Columbia.**

> **NOTE:** *At the date hereof the above-described property is known for* assessment and taxation purposes as Lot 2079 in Square 2566.

> **AND BEING the same property acquired by Faison-Kalorama, LLC, a North Carolina limited liability company, by virtue of that certain Deed**

dated August 17, 2004 and recorded August 18, 2004 as Instrument No. 2004114161 among the Land Records of the District of Columbia.

**Property Address:  1701 Kalorama Road, NW Unit #M-2 AKA 213, Washington, DC 20009**

TOGETHER with all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit an undivided interested (3.025%) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration. Included in the limited common elements of the condominium are the parking spaces. Parking spaces are not part of the conveyance of the real property described herein. However, the parking space which has been assigned to this unit is as follows:

**Parking Space Number: 3**

The Deed is delivered and accepted subjected to: taxes and assessments for the current calendar year and all subsequent years; zoning ordinances, restrictions, prohibitions, and other requirements imposed by governmental authority; conditions, restrictions, reservations, limitations and easements of record, if any, but this reference shall not operate to re-impose same; all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assumes(s) and agree(s) to observe and perform as evidenced by the signature(s) on this instrument. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

**The covenants set forth below shall run with the land for a period of twelve months following the date of this Deed upon which Grantee(s) acquired title to the property and following such twelve month period shall be extinguished and of no further force and effect:**

**1.    Grantee(s) hereby represents to Grantor that it is purchasing the Condominium Unit as his primary, year round residence and covenants and agrees not to lease the Condominium Unit until after the Grantee(s) has occupied the Condominium Unit as his principal year round residence for 12 consecutive months. In the event that Grantee(s) violates this covenant and agreement, Grantee(s) shall pay to Grantor all rent or other payments received in violation of this covenant and agreement.  Grantor shall have all remedies at law and in equity to enforce this**

covenant and agreement against Grantee(s), including without limitation, injunctive relief and specific performance.

2. Grantee(s) hereby further agrees with the Grantor, if Grantee(s) sells the Condominium Unit within the 12-month period following the date of this Deed, Grantor shall receive fifty percent (50%) of the Net Sales Proceeds, as defined below, from the sale of the Condominium Unit by the Grantee(s). "Net Sales Proceeds" shall mean the total sales price of the Condominium Unit appearing on the settlement statement of the Grantee(s) herein, as Seller, less Purchase Price paid by Grantee(s) under this Deed and less the closing costs paid by Grantee(s) to bona fide third parties unrelated to the Grantee(s) in connection with Grantee(s) purchase of the Condominium Unit. Notwithstanding the foregoing covenants, the provisions and restrictions for sale and lease shall not apply if Grantee(s) is required to sell or lease the Condominium Unit prior to expiration of the 12-month period following the date of this Deed as a result of Grantee(s) involuntary loss of employment.

AND the said Grantor herby covenants that it will warrant specially the property hereby conveyed; and that it will; execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this 15th day of February 2006, Faison-Kalorama, LLC has caused this Deed to be executed by FCD-1997 G.P., Inc., its Manager, as its act and deed on behalf of Faison-Kalorama, LLC, a North Carolina limited liability company.

FAISON-KALORAMA, LLC, a North Carolina limited liability company

By:     FCD-1997 G.P., Inc., a North Carolina
        corporation, its Manager

By: _____ SEAL
        Donald Deutsch, Jr.
        Vice President

District of Columbia: SS

On this 15th day of February 2006, before me the undersigned officer, personally appeared Donald Deutsch Jr., who acknowledged himself to be the Vice President of FCD-1997 G.P., Inc, a North Carolina corporation, who executed, acknowledged, and delivered the within instrument dated 15th of February, 2006 for the purposes therein contained on behalf of FCD-1997 G.P., Inc, a North Carolina corporation, who itself acted as a Managing Member on behalf of FAISON-KALORAMA, LLC, a North Carolina limited liability company.

Sworn and Subscribed before me, I hereunto set my hand and official seal.

_____
Notary Public, D.C.

My Commission Expires:

Georgina Bailey
Notary Public, District of Columbia
My Commission Expires 01/01/2011

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL RICHARD NEWTON

     PLAINTIFF,

                           Civil No. 1:06 CV 2003 TFH

v.

FAISON- KALORAMA, LLC.

       DEFENDANT               JURY DEMAND

## AMENDED VERIFIED COMPLAINT

NOW COMES the plaintiff, Paul Richard Newton, an individual, and brings this

amended complaint against Faison-Kalorama LLC and says as follows:

### PARTIES

1. The plaintiff is a resident and citizen of the District of Columbia.

2. The defendant is claims to be a North Carolina limited liability company,

   with authority to do business in the District of Columbia.

### JURISDICTION

3. This Court has jurisdiction over the parties in that all events alleged in the complaint took place within the District of Columbia, the real estate at issue is within the District of Columbia and the defendant conducts business within the District of Columbia.

4. The Court has personal and subject matter jurisdiction pursuant to *SCR Civil 13.*.

## STATEMENT OF FACTS

5. On or about May 12, 2005 the plaintiff entered into an agreement to purchase unit 213, later designated as Unit M-2, at the Delancey Lofts Condominium, located at 1701 Kalorama Street, Washington, D.C.,recorded in the land records of the DC Recorder of Deed as Square 2566 Lot 29, in fee simple.

6. Before signing the purchase contract the plaintiff questioned language in a addendum to the purchase contract titled in pertinent part "AFFIRMATION OF OWNER OCCUPANCY, LEASING AND RESALE ADDENDUM" relating to the seller, Faison-Kalorama, LLC, demanding the right to receive 50% of any profit from the sale of the unit if it were sold within one year of the plaintiff's purchase and ,separately, a right to receive one hundred per cent (100%) of any rents received by the purchaser within the first twelve months of purchase.

7. The seller's agent, Kristen Alberts, stated that the addendum was not being enforced because it was legally unenforceable and that in any case the addendum language would not appear on the deed to be conveyed.

8. Based on those assurances by Alberts, the plaintiff signed the purchase contract, and the addendum for the purchase of unit 213.

9. On at least two occasions, in late May 2005, and after the plaintiff's signing the contract, the plaintiff again sought specific assurances that the language requiring an

seller, Faison, fifty per cent (50%) of any profit above the purchase price and one
hundred per cent of any rent income for the first year **would   not** be a part of the deed
conveying fee simple title to the Plaintiff.   Again, the Plaintiff was assured again by Ms.
Alberts, the agent for the seller, that the language **would not** be a part of the deed from
the seller to the Plaintiff conveying fee simple title. The same representations were made
to other purchasers.  Please see Plaintiff's Exhibit 1, attached hereto.  At all  times
relevant to this complaint Ms. Alberts was the real estate agent of the defendant.

10.  After the signing of the contract, the seller provided a copy of the condominium
declaration which included a copy of the "Sample Deed" the seller would use to convey
title which did not include any covenant restraining the purchaser's right of alienation.
The "Deed" is included at Exhibit 2, hereto.

11.  On  the date of closing no one appeared on behalf of the seller at the closing.  At the
designated closing time, the settlement agents were "tied up" with a "complicated"
closing with someone else.  However, the Plaintiff, seated in a separate room alone,
signed the closing papers which were eventually provided by the settlement agent and
the purchase price already had been wired directly to the settlement agent by the
Plaintiffs mortgage lender  to be paid to  the sellers.

12.  A copy of the  deed was provided at the end of  the closing after all documents
required to be signed  by the plaintiff had been   signed..

13.  To the utter surprise of  the Plaintiff,  the deed covenant which was not to appear in
the deed was in fact made a part of the deed. See Exhibit 5 attached hereto.

14. To the best of the knowledge of the  Plaintiff, he never signed any covenant

document granting any rights to the seller.

15. In May 2006, the Plaintiff received an expression of interest in purchasing his unit for $699,000 approximately one hundred fifty thousand dollars ($150,000.00) more than the Purchaser's purchase price. However, the Plaintiff had been advised by a title company that the Plaintiff could not convey clear title, unless the deed covenant at issue was removed. See Plaintiff's Exhibit 4, attached hereto. The plaintiff was unable to enter into a contract to sell the property.

16. On May 5, 2006 the Plaintiff, through counsel, asked the defendant to voluntarily remove the deed covenant.

17. On or about May 16, 2006 the defendant, through its counsel, refused to remove the deed covenant but offered to remove the deed covenant when and the defendant had sold all units at the condominium project.

18. The deed covenant imposed by the defendant in the deed is intended to unjustly enrich the defendant and serves no public policy.

19. The deed covenant provision in the purchase contract addendum and deed was not the result of a negotiation process, Plaintiff did not bargain for or negotiate for the deed covenant provision which was written totally by the seller, and the Plaintiff received no consideration, for the imposed deed covenant.

20. At no time was the plaintiff told that the so-called deed covenant would attach to the land. and, as a consequence, impair the plaintiff's fee simple ownership.

21. The plaintiff is forced to bring this action after all efforts to resolve the matter have failed and the defendant has specifically refused to voluntarily remove its lien. As a

direct result of the deed covenant imposed by the seller, the Plaintiff has been unable to consummate sell his property in the manner and at the price he elects which is his right as a fee simple owner, to his pecuniary detriment, and ,separately, to exercise his full rights of ownership.

## COUNT I

### Fraudulent Misrepresentation, Fraud in the Inducement, Negligent Misrepresentation
### Tort

22. Plaintiff hereby re-alleges Paragraphs 1 through 21 as if fully stated.

23. The specific statements made by Kristen Alberts, as agent for the defendant, that the deed ro be provided by the seller would not include the covenant restraining the plaintiff's rights of alienation, were false , were material to the sales transaction at issue in this litigation, and the seller's agent, Alberts, knew or should have known of there falsity, and the statements that the covenant would not be a part of the deed were intended to deceive the plaintiff, were made before and after the plaintiff's signing the contract, and the plaintiff relied upon the statements made by Alberts in entering into the contract.

24. At all times relevant Alberts was an agent of the Seller.

25. The misrepresentations made by Albert induced the plaintiff to enter into the contract to purchase, and further to go to closing, only to be presented with a deed containing the covenant restraining his rights of alienation as a fee simple owner.

26. As a result of the misrepresentations as detailed herein above the plaintiff has suffered impairment of his rights of alienation as the fee simple owner of the property at issue in this litigation.

**WHEREFORE** the plaintiff seeks removal of the fraudulently procured deed covenant and that the plaintiff be awarded tort damages in an amount subject to proof, his reasonable attorney fees, the costs of litigation and any other such relief may found just and appropriate.

## COUNT II

### Slander of Title
### Tort

27.  Plaintiff hereby re-alleges Paragraphs 1 through 26 as if fully stated herein.

28.  The deed covenant imposed by the defendant is an unreasonable restraint on alienation which is fundamentally incompatible with the fee simple absolute ownership of the plaintiff and was not bargained for by the parties and the Plaintiff receive no consideration from the defendant to bind any such promise.

29.  The language of the Addendum to the purchase contract, at issue, was drafted only by the Defendant and appears as a standardized part of _every_ contract for the purchase of units at the Delancey Lofts Condominium and as such is an adhesion element of an adhesion contract.

30.  The restraint represented by the Defendant's imposed deed covenant only purpose is to allow the seller to participate in any appreciation in the value of a property it has sold in fee simple. And serves no cognizable public purpose.

31.  The imposed deed covenant cast a cloud on the title and impaired the vendibility of the plaintiff's property.

32.  The defendant refused to release the imposed covenant.

33.  As a proximate result of the defendant's refusal to release the imposed covenant, the Plaintiff lost a prospective profitable sale of the property in the amount of one hundred

and fifty thousand dollars above the mortgage price constituting special damages in this

matter.

34. The defendant refusing release of the improvident deed covenant was malicious, with

evil

motive, for no proper purpose , in reckless disregard of the Plaintiff's rights and akin to

racketeering..

35. This court has the authority to reform the deed and to find that the imposed covenant

is invalid and unenforceable.

**WHEREFORE** , Plaintiff respectfully requests that 1) the Court find that the imposed

covenant is invalid and unenforceable, 2)   the Court require release of  the imposed

covenant., 3)       the Plaintiff be awarded compensatory and exemplary damages , his

attorney fees and costs in the matter, and 4) such other relief as the Court may deem just

and proper in the matter.

## COUNT III

### Violations of *D.C. Code 28-2904(2003)*
### Unlawful Trade Practices

31.   Plaintiff  hereby re-alleges paragraphs 1 through 35 as if fully stated herein.

32. Defendant, by and through its agent, Kristen Alberts, stated that the addendum at

issue in the suit would not be a part of the deed as previously averred in paragraphs

6,7,and 9 herein above.

33. The statements by Alberts were made with full knowledge of their falsity; in the

alternative, Alberts knew or should have known whether such statements were in fact true

in her role as a real estate agent for the Seller.

34. The statements made by Alberts were intended to induce the Plaintiff to sign the

purchase contract and addendum and was a misrepresentation as to a material fact which had a tendency to mislead the Plaintiff in violation of *D.C. Code 28-3904(e)*.

35. As result of the above misrepresentation of a material fact the Plaintiff has suffered unreasonable impairment of his rights, as a fee simple owner, to lease his unit and retain such rental income for no proper purpose.

36. As a result of the above misrepresentation as detailed in paragraphs 6,7 and 9 herein above the Plaintiff has suffered a pecuniary loss because of unreasonable impairment of his right to freely sell his property at any time and at any price he elected without giving over to the Defendant fifty per cent (50%) of any profit.

**WHEREFORE,** Plaintiff respectfully requests that he 1) be awarded his compensatory damages subject to proof, 2) be awarded treble damages and punitive damages, 3) be awarded his attorney fees and costs, and 4) be awarded any other relief this Court may deem just and proper in this matter.

**JURY DEMAND**

37. Plaintiff demands trial by jury on all counts.

**VERIFICATION**

*District of Columbia: ss*

I, Paul Richard Newton, first being duly sworn on oath depose and state that the foregoing Verified Complaint has been read and subscribed by me and the things contained therein are true to the best of my knowledge, information and belief.

Paul Richard Newton

Subscribed and sworn to before me this 24 day of November, 2006.

My commission expires _____

**Zainab Kamara**
**Notary Public** District of **Columbia**
**My Commission** Expires June **30, 2011**

NOTARY PUBLIC

Respectfully submitted,

_____

Johnny R. Galloway DC Bar No. 458056
1516 P Street, NW
Washington, D.C. 20005
Tel: (202)726.5426
Fax: (202)726.6629; 588.8819

johngalloway@email.com

*Attorney for Plaintiff*

## VERIFICATION

DISTRICT OF COLUMBIA: ss

I, Paul Richard Newton, first being duly sworn on oath depose and state that the foregoing Answer and Counterclaim have been read and subscribed by me and that the contained therein are true and to he best of my knowledge, information and belief.

_____
Paul Richard Newton

Subscribed and sworn to before me this 15 day of June, 2006.

Traci S. Hajducsek
Notary Public, District of Columbia
My Commission Expires 8-31-2009

_____
NOTARY PUBLIC

My commission expires _____

april 5, 2007

Respectfully submitted,

_____
Johnny R. Galloway DC Bar 458056
johngalloway@email.com
1516 P Street, NW
Washington, D.C.   20005
Attorney for Plaintiff

**Exhibit 1**

**SALES CONTRACT ADDENDUM**

**THE DELANCEY LOFTS CONDOMINIUM**
**ADDENDUM  #1  TO CONDOMINIUM UNIT PURCHASE AGREEMENT**
**AFFIRMATION OF OWNER OCCUPANCY, LEASING AND RESALE ADDENDUM**

This Addendum to the Condominium Unit Purchase Agreement ("Addendum") is made and entered into this ___12th___ day of ___MAY___, 2005 by and between ___Paul  Richard  Newton___ ("Purchaser") and Faison-Kalorama, LLC, a North Carolina limited liability company ("Seller") on the Property in The Delancey Lofts Condominium identified as follows:

Condominium Unit No.          ___213___

Property Address:            1701 Kalorama Road, N.W.
                             Washington, DC  20009

WHEREAS, Purchaser and Seller entered into a certain Purchase Agreement, dated ___5/12___, 20_05_, and written addenda (if any) for the Property ("Agreement").

NOW THEREFORE, it is mutually agreed that the following provisions be added:

1.      Purchaser hereby represents to Seller that it is purchasing the Unit as his primary, year round residence and covenants and agrees not to lease the Unit until after the Purchaser has occupied the Unit as his principal year round residence for 12 consecutive months. In the event that Purchaser violates this covenant and agreement, Purchaser shall pay to Seller all rent or other payments received in violation of this covenant and agreement. Seller shall have all remedies at law and in equity to enforce this covenant and agreement against Purchaser, including without limitation injunctive relief and specific performance.

2.      Purchaser hereby agrees that if Purchaser sells the Unit within the 12-month period following Settlement, Seller shall receive fifty percent (50%) of the Net Sales Proceeds, as defined below, from the sale of the Condominium Unit by the Purchaser. In order to induce Seller to sell the Condominium Unit to Purchaser, Purchaser agrees that the deed of conveyance from Seller conveying the Condominium Unit to Purchaser shall contain a covenant in favor of the Seller for fifty percent of the Net Sales Proceeds, as defined below, of the sale of the Condominium Unit by the Purchaser if such sale occurs within the 12-month period following the date of Purchaser's acquisition of title to the Condominium Unit. For purposes of this Leasing and Resale Addendum, "Net Sales Proceeds" shall mean the total sales price of the Condominium Unit appearing on the settlement statement of the Purchaser, as seller, less the Purchase Price paid by Purchaser under this Agreement and less closing costs paid by Purchaser to bona fide third parties unrelated to the Purchaser in connection with Purchaser's purchase of the Unit.  Notwithstanding the foregoing, the provisions of this Addendum shall not apply if the Purchaser is required to sell or lease the Unit prior to expiration of the 12-month period following Settlement as a result of Purchaser's involuntary loss of employment.

This Addendum is incorporated into the Agreement by this reference and the provisions of this Addendum shall survive Settlement.  All other terms and conditions of the Agreement shall remain in full force and effect.  This Addendum is not a novation of the Agreement.

**PURCHASER**

Date: ___5 · 12 · 05___

_____
(Purchaser)

**Exhibit 2**

**SAMPLE  DEED**

### SAMPLE DEED

### THIS DEED

Made this _____ day of _____, 2005, by and between Faison-Kalorama, LLC, a North Carolina limited liability company (the "Grantor"), and _____ (hereinafter the "Grantee(s)");

WITNESSETH, that for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, Grantor does hereby grant and convey unto the Grantee(s), in fee simple as _____, the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto belonging, situate, lying and being in the District of Columbia, namely:

Lot _____ in Square _____, more particularly described as Condominium Unit _____ in The Delancey Lofts (hereinafter called the "Condominium") which was constituted and established under the District of Columbia Condominium Act of 1976, as amended, by the Condominium Declaration recorded _____, _____, as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Declaration"), and by the Condominium Bylaws recorded _____, _____ as Instrument Number _____ in the Office of the Recorder of Deeds of the District of Columbia (hereinafter called the "Condominium Bylaws"), and by the Condominium Plat and Plans recorded _____, _____, in Condominium Book _____ at page _____ in the Office of the Surveyor of the District of Columbia (hereinafter called the "Condominium Plat and Plans").

TOGETHER with all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit as undivided interest (stated as a percentage) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration.

The Deed is delivered and accepted subjected to: taxes and assessments for the current calendar year and all subsequent years; zoning ordinances, restrictions, prohibitions and other requirements imposed by governmental authority; conditions, restrictions, reservations, limitations and easements of record, if any, but this reference shall not operate to reimpose same; all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assume(s) and agree(s) to observe and perform as evidenced by the signature(s) on

-1-

1413206-1

this instrument. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

AND the said Grantor hereby convenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this _____ day of _____, 2005, Faison-Kalorama, LLC has caused this Deed to be executed by FCD-1997 G.P., Inc., its Manager, as its act and deed, on behalf Faison-Kalorama, LLC, a North Carolina limited liability company.

FAISON-KALORAMA, LLC, a North Carolina limited liability company

By:    FCD-1997 G.P., Inc., a North Carolina corporation, its Manager

By:    _____

Name: _____
Title: _____

I, _____, a Notary Public in and for the District of Columbia, do hereby certify that _____, who is personally well known to me as the _____ of FCD-1997 G.P., Inc., Manager of Faison-Kalorama, LLC, executed the foregoing Deed bearing the date of the ___ day of _____, 2005, personally appeared before me in the said District of Columbia and acknowledged the same to be his act and deed, and that he executed the same for the purposes therein contained.

GIVEN under my hand and seal this _____ day of _____, 2005.

_____
Notary Public

My Commission Expires: _____

**Exhibit 3**

**AFFIDAVIT OF DIANE L. KEELEY**

### AFFIDAVIT OF DIANE L. KEELEY

I, Diane L. Keeley, an adult older than twenty-one years of age, residing at 6320 Howe Place, Springfield, Virginia being duly sworn, deposes and says:

1. I entered into a contract purchase condominium unit #304 at the Delancey Lofts, located at 1701 Kalorama Rd., NW in Washington, D.C. on or about May 4, 2005.

2. I specifically recall that at the time I signed my contract to purchase, on or about May 4, 2005, I dealt with Kirsten Alberts as the real estate agent representing the seller, Faison-Kalorama, LLC.

3. I specifically recall that during the meeting on or about May 4, 2005, with Kristen Alberts, at which I was urged to sign my purchase contract, Ms. Alberts told me, before my signing the contract, that the provisions in the contract addendum, which would require me to give the seller, Faison-Kalorama, fifty percent of any resell profit and, or, one hundred per cent of rents for the unit I was contracting to purchase after my closing on the purchase of the unit was not being enforced by the Seller and was unenforceable in the District of Columbia.

3. Ultimately, I did not purchase the unit because of my special concerns about the limited means to vacate the unit in case of fire which was discovered during the "walk through inspections" conducted in anticipation of closing on the purchase.

4. I was released from the contract to purchase, with a full refund of my deposit, by the seller, Faison-Kalorama LLC.

5. I have received nothing in return for this statement nor have I been promised anything for making this statement.

6. I make this statement with knowledge of the laws against perjury.

Diáne L. Keeley

~~District of Columbia~~: ss
State of VA

Subscribed and subscribed to before me this 14th day of October 2006.

NOTARY PUBLIC

My commission expires 10-31-2007



**Exhibit 4**

**TITLE OPINION LETTER**

# NATIONAL TITLE CORPORATION

1516 P Street NW · Washington · District of Columbia · 20005
phone 202·466·6206   fax 202·466·8924   email nationalt@earthlink.net

July 19, 2006

TO WHOM IT MAY CONCERN:

I am writing this letter as President of National Title Corporation and an agent of First American Title Insurance Company.

We have reviewed the District of Columbia Purchase Money Deed (the "Deed") dated February 15, 2006 and recorded February 17, 2006 between Faison-Kalorama, LLC and Paul Richard Newton for Condominium Unit No. M-2 in The Delancey Lofts Condominium.

The covenant set forth in the Deed which requires the "Grantee" to pay the "Grantor" 50% of the Net Sales Proceeds in the event of a sale within 12 months is a covenant which must be included as a title exception in any new owner's or lender's title insurance policy.

In the event this exception to title (assumes the "Grantee" did not make the required payment to "Grantor") was included in any new title policy, in my opinion it would be almost impossible to sell the condominium unit within the initial 12 month period.

Sincerely,

NATIONAL TITLE CORPORATION

By:    Glenn D. Simpson
       President

**Exhibit 5**

**DEED AS RECORDED**





After Recording Please Mail To:
Champion Title & Settlements, Inc.
1133 Connecticut Avenue, N.W. 11th Floor
Washington, DC 20036

## DISTRICT OF COLUMBIA PURCHASE MONEY DEED

THIS DEED, made this 15th of February, 2006, by and between **Faison-Kalorama, LLC, a North Carolina limited liability company**, (hereinafter the "Grantor") and **Paul Richard NEWTON**, unmarried (hereinafter the "Grantee(s)");

WITNESSETH, that for and in consideration of the sum **Five Hundred Seventy-Eight Thousand Nine Hundred and 00/100 ($578,900.00)** and other good and valuable consideration, Grantor does hereby grant and convey unto the Grantee(s), in fee simple as **for his sole and separate equitable estate,** the following described land and premises, with improvements, including limited common elements, easements and appurtenances thereunto bellowing, situate, lying and being in the District of Columbia, namely:

> **Unit No. M-2 in the condominium known as "the Delancey Lofts Condominium", according to the Declaration of Condominium dated December 12, 2005 and recorded December 13, 2005 as Instrument No. 2005178568 among the Land Records of the District of Columbia, as amended by First Amendment to Declaration of Delancey Lofts Condominium dated January 25, 2006 and recorded January 26, 2006 as Instrument No. 2006012474 among said Land Records, and the Bylaws of Condominium relating thereto dated December 12, 2005 and recorded December 13, 2005 as Instrument No. 2005178569 among said Land Records, and as per plat recorded in the Office of the Surveyor for the District of Columbia in Condominium Book 56 at page 32.**

> **TOGETHER WITH an undivided percentage share interest in the Common Elements of said "The Delancey Lofts Condominium", as set forth in said Declaration of Condominium and the Exhibits thereto.**

> **Said Condominium project is situate on Lot 90 in Square 2566 in a subdivision made by Charles H. Tompkins and Lida R. Tompkins, as per plat recorded in Liber No. 71 at folio 8 in the Office of the Surveyor for the District of Columbia.**

> **NOTE:  At the date hereof the above-described property is known for assessment and taxation purposes as Lot 2079 in Square 2566.**

> **AND BEING the same property acquired by Faison-Kalorama, LLC, a North Carolina limited liability company, by virtue of that certain Deed**

dated August 17, 2004 and recorded August 18, 2004 as Instrument No. 2004114161 among the Land Records of the District of Columbia.

**Property Address: 1701 Kalorama Road, NW Unit #M-2 AKA 213, Washington, DC 20009**

TOGETHER with all of the appurtenances incident to said Condominium Unit as contained in the Condominium Declaration.

The Condominium Declaration allocates to the Condominium Unit an undivided interested (3.025%) in the common elements of the Condominium (hereinafter called the "Percentage Interest"). The Percentage Interest of the Condominium Unit is set forth in Exhibit B to the Condominium Declaration. Included in the limited common elements of the condominium are the parking spaces. Parking spaces are not part of the conveyance of the real property described herein. However, the parking space which has been assigned to this unit is as follows:

**Parking Space Number: 3**

The Deed is delivered and accepted subjected to: taxes and assessments for the current calendar year and all subsequent years; zoning ordinances, restrictions, prohibitions, and other requirements imposed by governmental authority; conditions, restrictions, reservations, limitations and easements of record, if any, but this reference shall not operate to re-impose same; all the provisions of the Condominium Act of 1976 of the District of Columbia, as amended, the Condominium Declaration, Condominium Bylaws, the Condominium Plat and Plans, and Rules and Regulations, including, but not limited to, the payment and lien of assessments for the maintenance, repair, replacement and other costs of operation of the Condominium, which the Grantee(s) assumes(s) and agree(s) to observe and perform as evidenced by the signature(s) on this instrument. This provision shall be construed to run with the land and shall inure to the benefit and be binding upon the parties hereto and their successors, heirs, personal representatives and assigns.

**The covenants set forth below shall run with the land for a period of twelve months following the date of this Deed upon which Grantee(s) acquired title to the property and following such twelve month period shall be extinguished and of no further force and effect:**

**1.    Grantee(s) hereby represents to Grantor that it is purchasing the Condominium Unit as his primary, year round residence and covenants and agrees not to lease the Condominium Unit until after the Grantee(s) has occupied the Condominium Unit as his principal year round residence for 12 consecutive months. In the event that Grantee(s) violates this covenant and agreement, Grantee(s) shall pay to Grantor all rent or other payments received in violation of this covenant and agreement.  Grantor shall have all remedies at law and in equity to enforce this**

covenant and agreement against Grantee(s), including without limitation, injunctive relief and specific performance.

    2.    Grantee(s) hereby further agrees with the Grantor, if Grantee(s) sells the Condominium Unit within the 12-month period following the date of this Deed, Grantor shall receive fifty percent (50%) of the Net Sales Proceeds, as defined below, from the sale of the Condominium Unit by the Grantee(s). "Net Sales Proceeds" shall mean the total sales price of the Condominium Unit appearing on the settlement statement of the Grantee(s) herein, as Seller, less Purchase Price paid by Grantee(s) under this Deed and less the closing costs paid by Grantee(s) to bona fide third parties unrelated to the Grantee(s) in connection with Grantee(s) purchase of the Condominium Unit. Notwithstanding the foregoing covenants, the provisions and restrictions for sale and lease shall not apply if Grantee(s) is required to sell or lease the Condominium Unit prior to expiration of the 12-month period following the date of this Deed as a result of Grantee(s) involuntary loss of employment.

AND the said Grantor herby covenants that it will warrant specially the property hereby conveyed; and that it will; execute such further assurances of said land as may be requisite.

IN WITNESS WHEREOF, on this 15th day of February 2006, Faison-Kalorama, LLC has caused this Deed to be executed by FCD-1997 G.P., Inc., its Manager, as its act and deed on behalf of Faison-Kalorama, LLC, a North Carolina limited liability company.

FAISON-KALORAMA, LLC, a North Carolina
limited liability company

By:    FCD-1997 G.P., Inc., a North Carolina
corporation, its Manager

By: _____  SEAL
Donald Deutsch, Jr.
Vice President

District of Columbia: SS

On this 15th day of February 2006, before me the undersigned officer, personally appeared Donald Deutsch Jr., who acknowledged himself to be the Vice President of FCD-1997 G.P., Inc, a North Carolina corporation, who executed, acknowledged, and delivered the within instrument dated 15th of February, 2006 for the purposes therein contained on behalf of FCD-1997 G.P., Inc, a North Carolina corporation, who itself acted as a Managing Member on behalf of FAISON-KALORAMA, LLC, a North Carolina limited liability company.

Sworn and Subscribed before me, I hereunto set my hand and official seal.

_____
Notary Public, D.C.

My Commission Expires:

Georgina Bailey
Notary Public, District of Columbia
My Commission Expires 01/01/2011